IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BILLY L. SPRUELL,

   Plaintiff,

    v.

GEORGE R. HARPER, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-356-TWT

### ORDER

This is a civil rights action. It is before the Court on the Plaintiff's Motion for Partial Summary Judgment [Doc. 45] and the Defendants' Motion for Summary Judgment [Doc. 46]. For the reasons set forth below, the Court DENIES the Plaintiff's Motion for Partial Summary Judgment [Doc. 45] and GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [Doc. 46].

### II. Background

On February 13, 2007, Billy Spruell, a practicing attorney, accompanied a client to the Office of State Administrative Hearings ("OSAH"). As he entered OSAH's offices in Atlanta, Spruell passed through a waiting room before continuing into the courtroom. After meeting with his client, Spruell returned to the waiting room to have a cellular telephone conversation with his law partner. George Harper, a Georgia

State Patrolman, was working an off-duty job as a security officer stationed in OSAH's waiting area. Harper had been instructed to keep people out of the waiting room while court was in session. Upon seeing Spruell on the phone, Harper called out several times, trying to attract Spruell's attention. At first, Spruell did not acknowledge Harper. When Harper got Spruell's attention, he advised Spruell that he could not be in the waiting room and would have to go into the hallway or back into the courtroom.

In the exchange that followed, the parties dispute what was said. Spruell responded to Harper's instruction by saying "well, I am here," or words to that effect. (Spruell Dep. at 52-53.) Subsequently, Spruell questioned Harper's authority and admits he may have used profanity. (Spruell Dep. at 58-60, 67.) During the confrontation, Spruell moved toward the door, but continued a verbal exchange with Harper. Spruell does not recall his exact words, but may have said "leave me alone" or "leave me the f—k alone." (Harper Dep. at 27.) While still on his phone, Spruell exited the waiting room into the hallway outside OSAH's offices. Just outside the entrance, Spruell turned to Harper and asked, "what do you mean,"[1] or something to that effect. (Spruell Dep. at 55.)

---

[1] Again, Spruell may have said "what the f–k do you mean?" (Spruell Dep. at 55.)

As Spruell walked away, still on the phone, his law partner asked him what was wrong. Spruell responded by saying, "this trooper won't quit f—king with me," or something to that effect. (Harper Dep. at 34.) At that point, Harper touched Spruell's arm, intending to escort him from the building. (Id. at 45-46, 53, 56.) Spruell snatched his arm away and said "take your goddamn hands off of me." Harper then pushed Spruell against a wall to restrain him. Spruell claims he was knocked temporarily unconscious when he struck the wall. (Spruell Dep. at 72.) Upon seeing the altercation from inside OSAH's offices, Stacy Forrest, also a Georgia State Patrolman, rushed into the hallway to assist Harper. Forrest and Harper took Spruell to the ground. In doing so, Spruell's head struck a display case on the other side of the hallway. (Forrest Dep. at 53.) As Spruell was lying face down on the ground, the officers wrested his hands behind his back and handcuffed him. As a result of this physical altercation, Spruell claims that he suffered post-traumatic post concussion syndrome and cervical strain (Kelman Dep. at 22-23), contusions and lacerations on the mandibular lip, right side of his face, temple area and right side of his neck, and mobility of teeth. (Mills Dep. at 29.)

Harper wrote Spruell a citation for felony obstruction of law enforcement officers. Harper then transported Spruell to the Fulton County Jail and swore out an affidavit for an arrest warrant. The affidavit stated, in relevant part:

> Subject was instructed per Judge Hackney's orders that he would have to enter the courtroom or go out into the hallway to handle any other business. Subject was using cell phone and refused to obey orders to exit the office. Subject was advised three occasions to exit the office. Subject used profanity several times towards officer while inside of the office and when outside of the office. The subject again refused to leave. Subject stated that he would do what he wanted to. I placed my hands on the subject in order to affect an arrest. Subject physically resisted and was taken to the ground by myself and another trooper.

(Harper Dep., Ex. 5.) The Public Integrity Unit of the Fulton County D.A.'s office investigated the incident but declined to pursue action against Harper or Forrest. The D.A.'s office also declined to prosecute Spruell for the incident.

Spruell filed this action under 42 U.S.C. § 1983 [See Doc. 4]. The Plaintiff claims that the Defendants violated his Fourth Amendment rights by arresting him without probable cause and using excessive force, and that Harper violated his Fourth Amendment rights by making false statements in an affidavit. The Plaintiff has moved for summary judgment as to liability [See Doc. 45]. The Defendants have also moved for summary judgment, arguing that Harper and Forrest are entitled to qualified immunity on all three claims [See Doc. 46].

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A.  Illegal Arrest

The Defendants have moved for summary judgment as to Spruell's claim for illegal arrest. Specifically, the Defendants contend that they are entitled to qualified immunity. "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim." Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990). However, "[r]egardless of whether probable cause actually existed, an officer is entitled to [qualified] immunity if he 'reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009) (quoting Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997)). Thus, qualified immunity protects officers who "reasonably but mistakenly conclude that probable cause is present." Id. Further,

"[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002) (quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)).

Although the Plaintiff was initially charged with felony obstruction of a law enforcement officer, the Defendants contend there was arguable probable cause to arrest Spruell for misdemeanor obstruction. The statute provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). "(T)he statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." Weidmann v. State, 222 Ga. App. 796, 797 (1996) (quoting Carter v. State, 188 Ga. App. 464, 465 (1988)). Further, "violence or forcible resistance is not required to prove that an officer was hindered or obstructed in a misdemeanor obstruction case. Argument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element." Pinchon v. State, 237 Ga. App. 675 (1999); see also Stryker v. State, 297 Ga. App. 493, 494-95 (2009) (disapproving of cases requiring forcible resistance).

Here, viewing the facts in the light most favorable to the Plaintiff, Spruell heard Harper's instructions to leave the waiting area, but did not believe Harper was speaking to him. (Spruell Dep. at 47.) It appeared to Harper that Spruell was deliberately turning away and ignoring his instructions. (Harper Dep. at 26.) When Harper finally got Spruell's attention, the Plaintiff questioned Harper's authority. (Spruell Dep. at 52-55.) Although Spruell does not remember his exact words, he admits he may have used profanity. (Spruell Dep. at 53-55, 66.) Although Spruell eventually exited the waiting area, he did not do so immediately, turning back several times on his way out. (Spruell Dep. at 55.) At one point, while just outside the entrance to OSAH's waiting area, Spruell turned to Harper and said, "what do you mean?" or "what the f–k do you mean?" (Id.) Finally, after exiting the waiting area, the Plaintiff said "this trooper won't quit f–king with me" or something to that effect. (Harper Dep. at 34.) Spruell said this near the open courtroom door.

Given this conduct in the vicinity of a courtroom, a reasonable officer could have believed there was probable cause to charge Spruell with misdemeanor obstruction. Harper was in charge of security inside OSAH's offices. He had been instructed to keep people out of the waiting area. Although Spruell did not understand why he was being asked to clear the waiting area and did not recognize Harper's authority, Spruell's misapprehensions do not make his arrest less reasonable. Indeed,

"[t]he only perspective that counts is that of a reasonable officer on the scene." Garczynski, 573 F.3d at 1166. A reasonable officer in Harper's position could have believed that Spruell's obstinance and foul language were an attempt to resist Harper's instructions. See Stryker, 297 Ga. App. at 495-96 (where officer instructed defendant not to move his car, defendant's suggestion that his friend leave with car supported obstruction charge).

The Plaintiff, however, relies on Woodward v. State, 219 Ga. App. 329 (1995).[2] In Woodward, the defendant was arrested for obstruction upon entering a public area in the sheriff's department. The defendant had been rude during a prior telephone conversation. The court reversed the defendant's conviction for misdemeanor obstruction, noting that "there was no evidence . . . that it was unlawful for [the defendant] to be in the building, or that [the defendant] had instructed her not to enter the second floor. Nor did the State show that [the defendant] had the authority to demand that she leave." Id. at 330. By contrast, here, Harper had instructions to clear the waiting area. He instructed Spruell to leave several times while Spruell was on the phone. After getting the Plaintiff's attention, Spruell challenged Harper's authority and questioned his directions. In light of all the circumstances, a reasonable officer

---

[2]Spruell also cites Ballew v. State, 245 Ga. App. 842 (2000), for the proposition that physical threat of violence is required for misdemeanor obstruction. Ballew, however, was disapproved of by Stryker, 297 Ga. App. at 494-95.

could arguably, if mistakenly, conclude that probable cause existed for misdemeanor obstruction.  See Garczynski, 573 F.3d at 1167 (quoting Montoute, 114 F.3d at 184) ("Qualified immunity thereby protects officers who 'reasonably but mistakenly conclude that probable cause is present.'").  Further, in arguing that the Defendants violated clearly established constitutional law, Spruell relies on cases decided by the Georgia Court of Appeals.  In the Eleventh Circuit, however, "the law can be 'clearly established' for qualified immunity purposes *only* by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997) (emphasis added).  Thus, cases from the Georgia Court of Appeals, cannot establish a clear constitutional violation.  For these reasons, the Defendants are entitled to qualified immunity on Spruell's illegal arrest claim.

The Plaintiff has also moved for summary judgment on liability as to his claim for illegal arrest [See Doc. 45].  As discussed above, however, the Defendants are entitled to qualified immunity on this claim.  For this reason, the Plaintiff's motion for summary judgment with respect to his illegal arrest claim is denied.

### B. Excessive Force

The Defendants have also moved for summary judgment on Spruell's excessive force claim [See Doc. 46].  Again, the Defendants claim that they are entitled to

qualified immunity. "A law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010). "To balance the necessity of the use of force ... against the arrestee's constitutional rights, a court must evaluate several factors, including '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).

In Johnson v. Andalusia Police Department, 633 F. Supp. 2d 1289 (M.D. Ala. 2009), a seventeen-year old female driver turned around in a public parking lot after seeing blue police lights ahead. The woman believed there had been a traffic accident, though police had actually set up a roadblock. As she drove away from the roadblock at a legal rate of speed, two officers pursued her. The officers caught up with her in a parking lot where she had exited her vehicle. Although the woman was not fleeing, the officers grabbed her by the neck, threw her against a car, and handcuffed her. The woman sued the officers for excessive force. The court declined to dismiss the plaintiff's claim, finding that the force used was not *de minimus*. The court reasoned that the girl was not accused of violating a serious crime, did not pose an immediate

threat, and was not attempting to evade arrest. Similarly, in Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998), two plaintiffs brought an excessive force claim against several arresting officers. The officers had wrestled one plaintiff to the ground and threw the other against a car. The court declined to grant summary judgment to the officers, noting that "[n]either [defendant] was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest." Id. at 1400.

Here, officers threw Spruell against a wall and wrestled him to the ground. In the process, Spruell's head struck a display case. See Johnson, 633 F. Supp. 2d at 1297 (grabbing plaintiff by neck, throwing her against a car and forcibly handcuffing her was not *de minimus* force). The Plaintiff claims that he suffered injuries including post-traumatic post concussion syndrome, cervical strain (Kelman Dep. at 22-23), contusions and lacerations, and mobility of teeth. (Mills Dep. at 29.) As in Thornton, the Defendants used this force even though Spruell was accused of obstruction, a relatively minor crime. Further, the Plaintiff was sixty-eight years old, unarmed (he had just passed through metal detectors at the entrance of OSAH's offices), and did not pose an immediate threat. See Johnson, 633 F. Supp. 2d at 1297 (noting the plaintiff was small, 17-year old girl who was not running or fleeing). Finally, viewing the facts in the light most favorable to the Plaintiff, Spruell did not resist arrest.

Rather, Spruell was talking on his phone and facing away from Harper when Harper grabbed him by the arm and shoved him against a wall with enough force to knock Spruell unconscious. (Spruell Dep. at 58, 61, 63, 72, 75.) Finally, as he was being arrested, Spruell did not offer violence, wrestle, wiggle, or tussle with the Defendants. (Forrest Dep. at 43; Harper Dep. at 57, 61-62.) For these reasons, the Defendants are not entitled to qualified immunity as to Spruell's excessive force claim.

The Plaintiff has also moved for summary judgment on his excessive force claim. There is, however, an issue of material fact as to whether the Defendants used excessive force. Here, viewing the facts in the light most favorable to the Defendants, the Plaintiff, unlike the plaintiffs in Johnson and Thornton, had been evasive and obstinate throughout his interaction with Harper. When Harper touched the Plaintiff's arm in the hallway, Spruell jerked his arm away and said "take your goddamned hands off me." Importantly, when Harper pushed Spruell against the wall, the Plaintiff put his clenched fists against his body in an offensive manner. (Harper Dep. at 59, 70; Forrest Dep. at 40.) With his fists near his chest, Defendant Forrest perceived that Spruell was in a position to strike the troopers. (Forrest Dep. at 45-46.) See Brown, 608 F.3d at 738 (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) ("Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'").

Further, while pinned against the wall, Harper ordered Spruell to give up his wrist, but Spruell refused to do so. (Forrest Dep. at 53.)  Thus, there is an issue of material fact as to whether Spruell's conduct, viewed from the perspective of a reasonable officer, posed a threat to the Defendants or constituted resistance.  For this reason, the Plaintiff's motion for summary judgment is denied.

### C.     False Statements in Affidavit

Finally, the Defendant has moved for summary judgment on Spruell's claim that Harper made knowingly false statements in an affidavit. (See Am. Compl. ¶ 30.) "[A] police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information." Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003).  While this information need not "be objectively accurate," it must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Id.  Thus, qualified immunity protects an officer unless "a reasonable police officer would have known that [the] testimony was not just negligently false, but recklessly so." Id.  Finally, for officers to be liable under § 1983, the false statements must be necessary to the magistrate judge's determination of probable cause. Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002).

The Plaintiff argues that the portion of Harper's affidavit stating that Spruell refused to leave the waiting area is false. (See Harper Dep., Ex. 5.) The affidavit states that "[s]ubject was using cell phone and refused to obey orders to exit the office." Id. Harper admits that this statement is technically untrue. (Harper Dep. at 90-91.) Spruell eventually left the waiting area, though he failed to respond to Harper's initial instructions and challenged Harper's authority on the way out. (See id.) Also, Spruell alleges that the portion of the affidavit alleging that Harper placed his hands on Spruell intending to arrest him is false. Id. Harper admitted that he did not intend to arrest Spruell until Spruell jerked his arm away. (Harper Dep. at 103.) As discussed above, however, the totality of the circumstances, including Spruell's conduct during the exchange with Harper inside the waiting area, established arguable probable cause to arrest Spruell without a warrant. See McKinnie v. Boseman, 2011 WL 744650, at *4 (S.D. Ga. Jan. 20, 2011) (noting that plaintiff's argument that arrest warrant contained false statements was "irrelevant, as Defendant has shown that he had arguable probable cause to arrest Plaintiff without an arrest warrant; in fact, Plaintiff maintains that Defendant did arrest him without a warrant, and only obtained the warrant after the arrest."). Harper is therefore entitled to qualified immunity on Spruell's illegal arrest claim. Thus, the arrest warrant was unnecessary to support a legal arrest. See Virginia v. Moore, 553 U.S. 164, 176 (2008) (warrantless arrests for

crimes committed in presence of arresting officer are constitutional). For this reason, the Defendants' motion for summary judgment as to Spruell's claim that the arrest warrant contained false statements should be granted.

The Plaintiff has also moved for summary judgment on his claim that Harper made false statements. As discussed above, however, Harper had arguable probable cause to arrest Spruell notwithstanding the arrest warrant. For this reason, the Plaintiff's motion for summary judgment as to false statements is denied.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES the Plaintiff's Motion for Partial Summary Judgment [Doc. 45] and GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [Doc. 46]. The parties are directed to submit a consolidated pre-trial order within 21 days from the docketing of this Order.

SO ORDERED, this 25 day of March, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge